# Exhibit A

## AMENDED SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter, the "Agreement") is entered into by and between ASIC Net, LLC, a Delaware limited liability company (hereinafter, "ASIC Net") and WT Data Mining and Science Corp., (hereinafter, "WT Data Mining") (each a "Party" and all parties to this Agreement hereinafter collectively referred to as the "Parties").

**WHEREAS**, on July 22, 2022, the Parties executed the Services Agreement (the "Original Services Agreement"), and on December 5, 2022 the Parties executed the First Amendment to Services Agreement ("Amendment" and collectively with the Original Services Agreement, the "Services Agreements," attached hereto as **Exhibit 1**) with a total agreed payment of $660,000 (Six Hundred Sixty Thousand Dollars) from WT Data Mining to ASIC Net, to be paid in six installments according to the following schedule: (1) $300,000 upon receipt of Invoice Number 1091 (the "Invoice," attached hereto as **Exhibit 2**); (2), $35,000.00 on December 10, 2022; (3) $35,000.00 on December 20, 2022; (4) $70,000.00 on January 10, 2022; (5) $70,000.00 on February 10, 2022; and (6) $70,000.00 on March 10, 2022;

**WHEREAS**, ASIC Net delivered all of the units agreed to by the Parties in the Agreement and outlined in the Invoice;

**WHEREAS**, WT Data Mining paid the first installment of $330,000 (Three Hundred Thirty Thousand Dollars) due when the Invoice was submitted on July 20, 2022;

**WHEREAS**, a payment dispute arose between the Parties over the remaining payments;

**WHEREAS,** WT Data Mining paid the second installment of $35,000 (Thirty-Five Thousand Dollars) in three payments of $17,500 (Seventeen-Five Hundred Dollars), $10,000 (Ten Thousand Dollars) and $7,500 (Seven Thousand Five Hundred Dollars);

**WHEREAS,** WT Data Mining paid $35,000 (Thirty-Five Thousand Dollars) on March 10, 2023;

**WHEREAS,** on March 29, 2023, the Parties executed a Settlement Agreement and Release (the "Original Settlement Agreement" attached hereto as **Exhibit 3**) to settle all potential claims and resolve any and all disputes and disparagements between the Parties, with a total agreed payment of $260,000.00 (Two Hundred Sixty Thousand and 00/100 Dollars, the "Original Settlement Amount") from WT Data Mining to ASIC Net to be paid in four installments according to the following schedule: $70,000 (Seventy Thousand Dollars) due on March 30, 2023; $70,000 (Seventy Thousand Dollars) due on April 7, 2023; $70,000 (Seventy Thousand Dollars) due on April 21, 2023; and $50,000 (Fifty Thousand Dollars) due on April 28, 2023;

**WHEREAS,** the Original Settlement Agreement included a penalty of $5,000 (Five Thousand Dollars) for any payments WT Data Mining defaulted on when due and payable;

**WHEREAS,** WT Data Mining defaulted on all four payments when they were due and payable under the Original Settlement Agreement incurring $20,000 (Twenty Thousand Dollars) of penalties which became due and payable on April 28, 2023;

**WHEREAS**, in the interests of efficiency and to avoid litigation costs, subject to the terms of this Agreement, the Parties have agreed to amend the Original Settlement Agreement to settle all potential claims and resolve any and all disputes and disagreements between the Parties;

**NOW THEREFORE**, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions which constitute full settlement and release of claims.

1.   Each of the Parties hereby ratify, confirm, acknowledge and agree that each of the above-stated WHEREAS clauses is a true and accurate statement of fact.

2.   **Effective Date:** This Agreement shall become effective on the date of the signature of the last signatory to the Agreement ("Effective Date").

3.   **No Admission of Liability:** The Parties agree and acknowledge that this Agreement (including any of its discrete sub-parts) is not and shall not be construed as an admission by the Parties of any liability or any act or wrongdoing whatsoever by either Party, including without limitation, any violation of (a) any federal, state or local law, statute, regulation, code or ordinance; or (b) any legal, common law or equitable duties.

4.   **Settlement Amount:** WT Data Mining shall pay, in the manner hereinafter set forth, the sum of $225,000.00 (Two Hundred Twenty-Five Thousand and 00/100 Dollars) (hereinafter, the "Revised Settlement Amount") as full and final settlement of all of the claims asserted against it by ASIC Net, including but not limited to any claims arising out of the Services Agreements or any invoices issued thereunder. The Revised Settlement Amount shall be paid in five installments according to the following schedule: $20,000 (Twenty Thousand Dollars) due on July 14, 2023; $20,000 (Twenty Thousand Dollars) due on July 19, 2023; $40,000 (Forty Thousand Dollars) due on July 24, 2023; $80,000 (Eighty Thousand Dollars) due on August 7, 2023; and $65,000 (Sixty Five Thousand Dollars) due on August 21, 2023. Upon receipt of the full payment of the Revised Settlement Amount, the Parties hereby agree to discharge each other from any liability related to the Services Agreements in accordance with Section 7 below on Releases.

5.   **Default in Payment.** If WT Data Mining fails to timely pay any installment in accordance with the payment schedule set forth in Section 4 above, it will incur an additional $7,500 penalty for each missed payment. Any penalty or penalties incurred pursuant to this Section shall become due and payable on August 21, 2023.  It is understood and agreed by the Parties that (i) ASIC Net shall be damaged by failure of WT Data Mining to make timely payments, (ii) it would be impracticable or extremely difficult to fix the actual damages resulting therefrom, (iii) any sums which would be payable under this Section 5 are in the nature of liquidated damages, and not a penalty, and are fair and reasonable estimates of such damages, and (iv) such payment represents a reasonable estimate of fair compensation for the loss of revenue which may be reasonably anticipated from such failure. The late or non-conforming tender of any installment shall not act to revive, or reinstate, the right to make periodic installments, or to defer payment of the total, and any payments received after the default shall

be applied on account of the balance to principal and without a waiver of the default herein or the right to collect the accelerated balance.

6. **Attorneys Fees.** In the event of a dispute between the parties concerning the terms of this Agreement, the party prevailing in such a dispute shall be entitled to all reasonable costs of collection and enforcement of this Agreement, including attorneys' fees and expenses.

7. **Releases:**

    a. Subject to and conditioned upon WT Data Mining's full payment of the Revised Settlement Amount, ASIC Net, on their own and on behalf of their parent companies, subsidiaries, representatives, principals, officers, directors, members, managers, shareholders, attorneys, agents, employees, heirs, executors, administrators, successors and assigns, agrees to release WT Data Mining and WT Data Mining's parent companies, subsidiaries, representatives, principals, officers, directors, members, managers, shareholders, attorneys, agents, employees, heirs, executors, administrators, successors and assigns from any claim ASIC Net has or may have had arising from or related to the Services Agreements, the Invoice, and/or the Original Settlement Agreement.

    b. In consideration of the releases provided for herein, WT Data Mining, on their own and on behalf of their parent companies, subsidiaries, representatives, principals, officers, directors, members, managers, shareholders, attorneys, agents, employees, heirs, executors, administrators, successors and assigns agrees to release ASIC Net and ASIC Net's parent companies, subsidiaries, representatives, principals, officers, directors, members, managers, shareholders, attorneys, agents, employees, heirs, executors, administrators, successors and assigns from any claim WT Data Mining has or may have had arising from or related to the Services Agreements, the Invoice, and/or the Original Settlement Agreement.

    c. Releases do not extend to claims that the releasing party does not know or suspect to exist at the time of executing the release in his or her favor at the time of executing this Agreement. Releases do not extend to a breach of this Agreement after the Effective Date. For the avoidance of doubt, if WT Data Mining fails to make payment of the total Revised Settlement Amount, ASIC Net (at its option) may pursue any claims arising from or related to the Services Agreements and the Invoice.

8. **Confidentiality:** The Parties agree and warrant that all the provisions and terms of this Agreement and the Original Settlement Agreement are confidential and shall remain in strict confidence, including the amount and the act of making payments of the Revised Settlement Amount, and that no copy of this Agreement or the Original Settlement Agreement or any of the terms thereof shall be disclosed to any other persons or entities whatsoever, except (a) as may be required by court order or other quasi-judicial or regulatory body with the legal right and power to demand such information; (b) to the Parties' legal and financial advisors, in each case where such disclosure may be required for legitimate legal, business or tax purposes and where the recipient of such information agrees to receive and maintain the information in strict confidence in accordance with the terms of this Agreement; (c) to any appropriate regulatory or

tax authorities with jurisdiction over the Parties; (d) to the extent necessary to enforce any term of this Agreement; and (e) as otherwise may be required by law, in response to a subpoena or other legal process. Further, any communications between the Parties relating to this Agreement are likewise confidential and shall remain in strict confidence. Any disclosure of any confidential information shall constitute a material breach of this Agreement.

9. **Non-disparagement**: The Parties agree to never make any negative or disparaging statements (orally or in writing) about the other Party, its known officers, directors, agents, employees, representatives, principals, affiliates, parents, subsidiaries, predecessors, or successors, except as required by law, legal process or court order. To the extent the Parties are aware of any negative or disparaging statements existing in writing or electronic format at the time this Agreement is executed, the Parties agree to delete and de-publish any such statements within five (5) days of the Effective Date.

10. **Binding Nature of Agreement**: This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of each Party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

11. **Governing Law and Jurisdiction**: This Agreement shall be deemed to be made and entered into in the State of New York, and shall in all respects be interpreted, enforced and governed under the laws of New York, without giving effect to applicable principles of conflicts of law to the extent that the application of the laws of another jurisdiction would be required thereby. The Parties shall submit all their disputes arising out of or in connection with this Agreement to the exclusive jurisdiction and venue of the federal and state courts located in the State and County of New York.

12. **Interpretation:** The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This Agreement has been negotiated by and between the Parties' respective counsel and shall not be construed against the "drafter" of this Agreement.

13. **Notices.** Any notices to be given hereunder by either party to the other may be affected either by personal delivery in writing or by U.S. mail, electronic mail, registered or certified, postage prepared with return receipt requested, or any other nationally recognized overnight courier service. Mailed notices shall be addressed to the parties at the addresses appearing in the signature block of this Agreement, but each party may change the address by written notice in accordance with this paragraph. Notices delivered personally will be deemed communicated as of actual receipt; mailed notices will be deemed communicated as of three (3) calendar days after mailing; and notice sent via electronic mail will be deemed communicated when receipt is confirmed by the receiving party via return electronic mail. Correspondence deposited with an overnight courier service will be deemed delivered on the next business day.

14. **Modification of Agreement:** This Agreement may be amended, revoked, changed, or modified only upon a written agreement executed by all Parties. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the Party against whom such waiver is charged.

15. **Entire Agreement:** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes and replaces any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof, including but not limited to the Original Settlement Agreement. For avoidance of doubt, the payment and penalty provisions in Sections 4 and 5 of this Agreement supersede and replace any payment and penalty provisions in the Original Settlement Agreement.

16. **Headings:** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

17. **Signatures in Counterparts:** This Agreement may be executed in any number of counterparts, each of which shall be taken to be one and the same instrument, for the same effect as if all Parties had executed the same signature page. Counterparts with electronic signatures and/or that are transmitted electronically shall have the same force and effect as an originally executed document.

18. **Representations and Warranties:** The undersigned Parties, hereby expressly state that they have fully consulted with their respective legal counsel, prior to executing this Agreement, and are executing this Agreement on their own free will, after full consultation with their respective legal counsel. The Parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have been advised of their right to discuss all aspects of this Agreement with an attorney, that they have carefully read and fully understand the Agreement, that they have reviewed this Agreement with their respective counsel, that they have had the opportunity to have their counsel answer any questions that they might have had, that they have had a reasonable period of time to consider whether or not to enter into this Agreement, and that they have executed this Agreement voluntarily, knowingly, and without duress, coercion or undue influence.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective duly authorized representatives as of the Effective Date.

| ASIC NET, LLC | WT DATA MINING AND SCIENCE CORP. |
|---|---|
| By: _Mason Jappa_ | By: _Rudá Pellini_ |
| Name: Mason Jappa | Name: Rudá Pellini |
| Title: Co-Founder & COO | Title: Director |
| Address: 124 West 23rd Street, #6B | Address: 8040 Hosbrook Road, Suite 202, |
| New York, NY 10011 | Cincinnati, OH 45236 – USA |
| Date: 7/14/2023 | Date: 7/14/2023 |

4866-8467-4159.3